Dwight W. TOLLIVER, Appellant,

v.

The UNITED STATES of America,
Appellee.

No. 76–1895.

United States Court of Appeals,
Fourth Circuit.

Argued July 12, 1977.

Decided Oct. 11, 1977.

Mark W. Foster, Washington, D. C. (Moore & Foster, Washington, D. C., on brief), for appellant.

Elsie L. Munsell, Asst. U. S. Atty., Alexandria, Va. (William B. Cummings, U. S. Atty., Alexandria, Va., on brief), for appellee.

Before WINTER and BUTZNER, Circuit Judges.

WINTER, Circuit Judge:

By a motion under 28 U.S.C. § 2255, Dwight W. Tolliver sought to vacate his sentence of two years' imprisonment plus a special parole term of two years imposed upon his plea of guilty to a charge of conspiracy to manufacture phencyclidine, a controlled substance, in violation of 21 U.S.C. §§ 846, 841. He attacked the voluntariness of his plea on the ground that he had been denied effective assistance of counsel in tendering it and he had been denied effective assistance of counsel in seeking to withdraw it before sentence was

imposed on him. The district court denied relief. It concluded that, while counsel were perhaps incorrect in the legal advice given Tolliver, their representation was reasonably conscientious and diligent and the voluntariness of Tolliver's plea was not impugned. We disagree. We reverse and direct that Tolliver's motion be granted.

## I.

Tolliver was named in three counts of a four-count indictment, charging him, and others, with (1) conspiracy to manufacture phencyclidine, a controlled substance (21 U.S.C. §§ 841, 846); (2) use of an interstate telephone in furtherance of the substantive offense (21 U.S.C. § 843(b)); and (3) interstate travel in connection with the substantive offense (18 U.S.C. § 1952). At his arraignment on November 17, 1975, he pleaded not guilty to each charge and a trial date was set for December 11, 1975. Pre-trial motions, including one to suppress, were heard and denied on December 5, 1975, but the district court dismissed the interstate travel count, leaving Tolliver charged with conspiracy and use of an interstate telephone.

On December 10, 1975, pursuant to a local rule which requires that pleas of guilty be entered twenty-four hours before trial, Tolliver, acting on the advice of his attorneys, entered a plea of guilty to the conspiracy count. He was not sentenced until January 2, 1976. Before sentence was imposed, his counsel moved to withdraw his plea on the ground that Tolliver had been treated unequally with a codefendant who had been permitted to plead to a misdemeanor count. The motion was denied and Tolliver was sentenced to four years' imprisonment plus a special parole term of two years. Later, the district court granted a motion to reduce sentence (Rule 35, F.R.Crim.P.) and

sentenced Tolliver to two years' imprisonment plus a special parole term of two years.

The motion under 28 U.S.C. § 2255 was filed March 11, 1976.

## II.

The circumstances leading up to Tolliver's guilty plea and his abortive attempt to withdraw the plea were developed at the plenary hearing on the § 2255 motion. The facts are largely undisputed. The evidence showed that when Tolliver was arrested, he retained two lawyers from Washington, D. C. to help prepare his defense. A third attorney, from the Eastern District of Virginia, was later engaged to comply with local rules.

In October of 1975, the possibility of pleading guilty was first raised by the attorneys. Tolliver was firm in his refusal to change his plea. However, when the district court denied the several motions shortly before trial, his attorneys renewed their efforts to convince him to plead guilty.

Tolliver was summoned to the office shared by two of his attorneys on December 9, 1975. At the meeting, the lawyers advised Tolliver to plead guilty, and he refused. Toward the goal of persuading him to plead guilty, the lawyers made several arguments based upon Tolliver's two previous criminal convictions. These convictions were presumed to be for possession of marijuana.

First, the lawyers advised Tolliver that he was facing a maximum of eighteen years in jail if he went to trial and was convicted on both counts.[1] This was because the maximum penalty on both counts could be doubled in cases of multiple drug offenders.[2] By way of contrast, the lawyers stat-

---

1. Tolliver's testimony was that he was told that he "would" get eighteen years' imprisonment. His lawyers testified that they told him that he "could" get eighteen years' imprisonment, but that he would probably receive much less. The district court found the latter version more credible. There is no dispute, however, that the government was pressing for a double pen-

alty. In oral argument before us, the Assistant United States Attorney confirmed this fact.

2. The maximum penalty for conspiracy to manufacture phencyclidine (a schedule III substance) is: a prison term of five years, a fine of not more than $15,000, or both. 21 U.S.C. §§ 812(c), 841(b)(1)(B). The maximum penalty for use of an interstate telephone (in further-

ed that they had been able to secure an advantageous plea bargain from the Assistant United States Attorney. The government would permit Tolliver to plead guilty to conspiracy, and in return would drop the telephone charge. Additionally, the government would not seek double punishment, reducing Tolliver's maximum exposure to five years.[3]

In addition to avoiding a possible eighteen-year sentence, the lawyers advanced two other arguments. First, they advised Tolliver that if he insisted upon going to trial, he would probably have to testify, in which case he would be impeached with his prior convictions. Second, if he were convicted, the district judge could take the prior convictions into account and impose a harsher sentence (whether or not the government asked for, and received, double punishment under the statute).[4]

Despite his lawyers' arguments, Tolliver did not agree to plead guilty at the December 9th meeting. He returned home to discuss his predicament with his common-law wife. The next morning, at court, Tolliver's lawyers pressed the same advice for the same reasons. Tolliver finally yielded, and a plea of guilty was entered to the conspiracy count.

Within a very short time, Tolliver began to experience misgivings. As soon as the plea was accepted, Tolliver was accompanied by one of his lawyers to the probation office for the preparation of a presentence report. Tolliver was interviewed and had the opportunity to review his previous criminal record. Seeing that his prior convic-

tions were for violations of the Marijuana Tax Transfer Act and not for simple possession, Tolliver asked his attorney whether the convictions were valid. He recalled reading about *Leary v. United States,* 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), holding that certain convictions under the Act were barred. The lawyer replied that *Leary* had no effect, that the prior convictions were valid, and that they could have been used at trial.

Still dissatisfied, Tolliver arranged another meeting with his lawyers, where he indicated a desire to withdraw his plea. He directed one attorney to file a written motion of withdrawal. This was never done, but the oral motion to withdraw the plea was made prior to the imposition of sentence. The motion was based solely upon Tolliver's belief that certain codefendants had received more favorable treatment. There was no mention of *Leary* or of Tolliver's prior convictions. The motion was denied, and Tolliver was sentenced.

### III.

■ Our conclusion that Tolliver was denied the effective assistance of counsel, both in tendering his plea and in seeking to withdraw it, stems from consideration of *Leary v. United States,* 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969). There, the Supreme Court held that a timely assertion of the fifth amendment privilege against self-incrimination would bar a prosecution under 26 U.S.C. § 4744(a) (acquisition, transportation or concealment of marijuana obtained without payment of special tax).[5]

---

ance of the conspiracy) is: a prison term of four years, a fine of not more than $30,000, or both. 21 U.S.C. § 843(c). Punishment may be doubled if either offense is committed by an individual with previous convictions under the same subchapter.

Since Tolliver had previous convictions, presumed to be for possession of marijuana, he faced a maximum punishment, under the indictment, of eighteen years (ten years for conspiracy, and eight years for use of the telephone, running consecutively).

**3.** The ordinary maximum punishment for conspiracy. *See* n.2, *supra.*

**4.** In other words, the district judge could, as in any criminal case, consider defendant's background before imposing sentence. This would include previous convictions and might lead to enhanced punishment, irrespective of statutes dealing with multiple offenders.

**5.** 26 U.S.C. § 4744(a) declared that

It shall be unlawful for any person who is a transferee of [marihuana] required to pay the transfer tax imposed by section 4741(a)—
   (1) to acquire or otherwise obtain any marihuana without having paid such tax, or

Tolliver's previous convictions, in the District of Columbia, were for violations of that statute, and, moreover, he had been represented by a lawyer who was one of the three representing him in the instant case.

It is true that Tolliver's convictions in the District of Columbia predated *Leary,* but, by the time of Tolliver's plea in the instant case, a large number of courts had held the decision in *Leary* to be retroactive. *United States v. Liguori,* 430 F.2d 842, 846 (2 Cir. 1970), *cert. denied,* 402 U.S. 948, 91 S.Ct. 1614, 29 L.Ed.2d 118 (1971); *Bannister v. United States,* 446 F.2d 1250, 1257, 1264 (3 Cir. 1971) (in banc; separate opinions of Biggs and Gibbons, JJ.); *Harrington v. United States,* 444 F.2d 1190, 1192 (5 Cir.), *appeal dismissed as moot,* 445 F.2d 1399 (1971); *Santos v. United States,* 417 F.2d 340, 345 (7 Cir. 1969), *vacated on other grounds,* 397 U.S. 46, 90 S.Ct. 811, 25 L.Ed.2d 36 (1970); *Scogin v. United States,* 446 F.2d 416 (8 Cir. 1971); *United States v. Ingman,* 426 F.2d 973, 975 (9 Cir. 1970); *Martinez v. United States,* 464 F.2d 1289, 1290 (10 Cir. 1972). *See United States v. Broadus,* 146 U.S.App.D.C. 178, 450 F.2d 639 (1971).[6] In our circuit, we had not had occasion to decide any issue of the retroactive effect of *Leary,* but we had decided *United States v. Bluso,* 519 F.2d 473 (4 Cir. 1975), giving retroactive effect to *Marchetti v. United States,* 390 U.S. 39, 88 S.Ct. 697,

19 L.Ed.2d 889 (1968), and *Grosso v. United States,* 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968), both of which were major underpinnings for the decision in *Leary.*

It seems at once obvious that as a result of the decision in *Leary* and the various decisions considering its effect, Tolliver's lawyers should have advised him that his prior convictions were probably not valid and that it was far from certain that (a) if he testified in his own behalf, he could be impeached on the basis of the prior convictions; (b) if he were convicted, he could be subjected to the double penalty provisions of the statutes he was found to have violated; and (c) if he were convicted, his punishment could be enhanced because of his prior record, even aside from the statutory double penalty.[7]

From the record, we could infer that Tolliver's lawyers were unaware of *Leary* and its sequelae and of the precise nature of Tolliver's prior convictions at the time that they repeatedly urged him to plead guilty. But even if we take that view, the fact remains that Tolliver inquired about the effect of *Leary* and counsel were given knowledge of the fact that Tolliver had been convicted under the very statute that was substantially invalidated in *Leary* before sentence was imposed. They, nonetheless, did not alter their advice to Tolliver

(2) to transport or conceal, or in any manner facilitate the transportation or concealment of, any marihuana so acquired or obtained.

With certain exceptions, all persons who were transferees of marijuana were required to pay the special tax. 26 U.S.C. §§ 4741, 4742(a), (b).

Payment of the tax would require the submission of certain information, identifying the taxpayer and associating him with possession of marijuana. This information was sent to the IRS which could, upon request, forward copies to state and local law enforcement agencies. The taxpayer might therefore subject himself to prosecution under state and local drug laws (which, unlike federal law, made possession of marijuana illegal).

*Leary* therefore held that the payment of the tax was incriminating and that timely assertion of the fifth amendment privilege would bar prosecution under § 4744(a).

After the decision, Congress repealed §§ 4741, 4742 and 4744. Pub.L. 91–513, Title III, § 1101(b)(3)(A), October 27, 1970, 84 Stat. 1292.

6. *Broadus* held that a prior conviction under 26 U.S.C. § 4744(a), invalidated by *Leary,* could not be used to establish second offender status under the Harrison Narcotics Act and the Jones-Miller Act.

7. Both *Loper v. Beto,* 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972), and *United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), also support this conclusion. Both held that convictions in violation of a defendant's sixth amendment right to counsel could not be used to impeach the defendant at trial or relied on at the time of sentencing. Although sixth amendment problems are theoretically distinct from those under the fifth amendment, they are sufficiently close that these decisions constitute more than merely a "straw in the wind."

and they did not press their ignorance of the facts and the law in support of a motion to withdraw the plea before sentence was imposed, at the very time when the equities for withdrawal were clearly in Tolliver's favor. *United States v. Strauss,* 563 F.2d 127 (4 Cir., Decided Oct. 13, 1977).

In *Marzullo v. Maryland,* 561 F.2d 540 (4 Cir., 1977), we recently had occasion to re-determine the appropriate standard for determining when criminal defendants have been denied their constitutional right to the effective assistance of counsel. Because of *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), we held that the present standard in this circuit is whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." 397 U.S. at 770–71, 90 S.Ct. at 1449. We do not think that that standard was satisfied in the instant case. "[E]ffective representation is not the same as errorless representation," 561 F.2d at 544, but we think that here the misadvice was so flagrant that "it resulted from neglect or ignorance rather than from informed, professional deliberation." 561 F.2d at 544.[8]

Of course it may well be, as the district court found, that counsel obtained for Tolliver "a good deal." If guilty, Tolliver's sentence is relatively light compared to what the statutes permit. But at this juncture of the case, we cannot say what his sentence would otherwise have been had he gone to trial and been convicted on one or both of the charges. The fact remains that Tolliver was entitled to effective assistance of counsel when he tendered his plea and when he sought to withdraw his plea, and this he did not receive. Had he received it, the decision to plead guilty would have been his own depending upon his informed appraisal of the attractiveness of the government's offer.

Because Tolliver did not receive effective assistance of counsel, it follows that his sentence must be vacated, his plea must be stricken, and he must be afforded the opportunity to plead anew. *Kercheval v. United States,* 274 U.S. 220, 223, 47 S.Ct. 582, 71 L.Ed. 1009 (1927).

*REVERSED AND REMANDED.*

---

8. One of Tolliver's counsel admitted that he might have read *Leary* prior to the plea, but he was not certain.