**Ralph William FULLER, Appellant,**

v.

**D. G. LUTHER, Superintendent, Department of Corrections, Appellee.**

**No. 77–2157.**

United States Court of Appeals, Fourth Circuit.

Argued March 6, 1978.

Decided May 15, 1978.

Adam Stein, Chapel Hill, N. C. (North Carolina Civil Liberties Union and Norman B. Smith, Greensboro, N. C., on brief) for appellant.

Marvin Schiller, Asst. Atty. Gen., Raleigh, N. C. (Rufus L. Edmisten, Atty. Gen. of North Carolina, Robert P. Gruber, Sp. Deputy Atty. Gen., Raleigh, N. C., on brief) for appellee.

Before BRYAN, Senior Circuit Judge, and BUTZNER and HALL, Circuit Judges.

BUTZNER, Circuit Judge:

Ralph William Fuller, convicted of robbery, appeals from the order of the district court dismissing his petition for a writ of habeas corpus on the basis of the state court record without an evidentiary hearing. Fuller claims that his court-appointed counsel was incompetent because he did not object both to the identification testimony of the victim which he alleges was tainted by pre-trial suggestive techniques and to the testimony of a police officer regarding Fuller's statements procured as a result of the pre-trial identification. Fuller also contends that his attorney failed to present his defense of alibi and that he refused to permit him to take the stand in his own behalf. Finally, he protests that his attorney was drinking during the course of the trial and that due to mental illness the attorney failed to perfect an appeal. We conclude that summary disposition on the basis of the state court record was inappropriate because the merits of critical factual disputes were not resolved in the state proceedings and because it is impossible to reconstruct the relevant findings of fact. We therefore remand the case for an evidentiary hearing.

I

At approximately 1:45 a. m. on Saturday, May 12, 1972, a lone gunman robbed a gas station attendant in Boone, North Carolina. The following evening police officers told the attendant that they wanted him to view a suspect in Lexington, North Carolina. In the early morning of May 14, 1972, the attendant identified Fuller when the police officers brought him into the Lexington police station. The officers then put Fuller alone in a room and the attendant, looking through a one-way mirror, again identified him. The officers then took the attendant and Fuller from Lexington to Boone in the same car. When they arrived in Boone after a two hour trip, Fuller was placed in a lineup, and the attendant once more identified him.

The attendant was an essential witness for the state. Nevertheless, Fuller's attorney made no objection to the manner in which the police obtained his pre-trial identification. Nor did the attorney explore whether the lineup in Boone was conducted before or after Fuller was arrested. In Fuller's subsequent appeal, in which he was represented by other counsel, the court said: "No objection was made to the testimony of the attendant when he identified defendant as the man who robbed him at gunpoint and there was no request for a *voir dire*. Defendant's attempted showing of impermissible suggestiveness is raised for the first time on appeal and comes too late." *State v. Fuller,* 27 N.C.App. 249, 252, 218 S.E.2d 515, 517 (1975).

The only other witness for the prosecution was a police officer who testified that he interrogated Fuller after the attendant identified him at the Lexington police station. He said Fuller first denied being in Boone but then admitted stopping at another service station there on the night of May 11, 1972. Fuller's attorney made no objection to this proof. However, the trial court interrupted the police officer's testimony and conducted a *voir dire* in the absence of the jury to determine whether the officer had advised Fuller of his fifth amendment rights. When the court ascertained that this had been done, it admitted the evidence. There was no inquiry on Fuller's behalf to determine whether this testimony was tainted by the identification techniques that immediately preceded the police officer's interrogation.

Fuller's attorney did not present any defense.

Fuller was convicted and sentenced to imprisonment for 20 to 25 years. The next day he told the trial judge that he did not want the same attorney to represent him on appeal. He said of the attorney: "He will not handle my case the way I want it. He just wouldn't put the witnesses I had on the stand." Nevertheless the judge appointed the trial attorney to prepare the appeal and allowed him 75 days to serve the record of the case on the district attorney.

The attorney did not meet this deadline, but to gain an extension of time, he falsely represented to the North Carolina Court of Appeals that he had served the record on the district attorney. After granting a second extension, in December, 1974, the Court of Appeals directed the Superior Court to ascertain the status of the case, to discharge the attorney, and to appoint new counsel for Fuller. The Superior Court found that the failure of Fuller's attorney to prosecute the appeal was not willful because he had become mentally incapacitated. It therefore appointed a new attorney.

After Fuller's conviction was affirmed, he sought post-conviction relief in the Superior Court alleging ineffective assistance of counsel. At the hearing on his petition, much of the evidence conflicted. Fuller testified that on the morning of the trial he met with his attorney and refused to plead guilty because he was innocent. He claimed that he told his attorney he had returned from Boone to his home in Lexington, a distance of 100 miles, arriving at 1:30 in the morning of the same day that the service station was robbed; that his mother, son, and wife were present at the conference; and that they were prepared to testify in corroboration of his alibi. He declared that at the conclusion of the pre-trial conference, he was under the impression that his attorney would put these witnesses on the stand. He also asserted that his attorney was drinking at the time. Fuller testified that after the prosecution rested, his attorney refused to allow him to take the stand or to present his alibi witnesses. Fuller's mother corroborated his testimony about the events that took place at the pre-trial conference.

In contrast, Fuller's lawyer denied that he refused to permit Fuller to take the stand but said that he strongly advised against it because of his prior convictions. He testified that he also advised against presenting evidence from Fuller's family. His investigation indicated that Fuller's wife was asleep at the time Fuller claims to have gotten home and that his son was too young to know the meaning of an oath. He

concluded that the jury would not believe Fuller's mother because of her close relationship. He stated that Fuller agreed to resting the case without presenting any evidence. He denied that he had been drinking, and in explanation of his failure to prosecute the appeal, he said he entered a hospital a couple of months after the trial because he was "rundown."

At the conclusion of the post-conviction hearing the Superior Court dismissed Fuller's petition. It noted that the Court of Appeals had already passed on the question of competency of counsel and had found no deficiency. However, in contradiction to the Court of Appeals' opinion, it found that Fuller's attorney had entered a general objection to the identification of Fuller. It also noted that Fuller had been convicted of several prior crimes, that he was familiar with court procedure, and that he had been advised of his right to take the stand and of the prosecutor's right to cross-examine him concerning prior convictions. It found that counsel conferred with Fuller concerning available defenses including the subject of the kinship of his witnesses and that Fuller's son did not understand the nature of the oath. It concluded that the trial attorney's representation was not so lacking that the trial became a farce and mockery of justice. Consequently, it denied relief and dismissed Fuller's petition.

Contrary to the Superior Court's finding about the objection to the identification testimony, the record indicates that the only objection made by Fuller's attorney was to the form of a question. The Court of Appeals' specific finding that no objection was made and that there was no request for a *voir dire* appears to be fully justified by the record. Moreover, the Superior Court did not resolve the factual disputes about whether the attorney refused Fuller's request to testify and to present witnesses or whether he merely advised against this course of action. Finally the Superior Court made no finding about the conflicting testimony concerning the attorney's drinking.

## II

Fuller urges us to reverse the district court's judgment and grant the writ on the basis of the appellate record. We decline to do this because too many factual issues remain unresolved. Moreover, we believe the district court should initially assess whether the attorney's representation "was within the range of competence demanded of attorneys in criminal cases," the standard suggested by *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970), and adopted by us in *Marzullo v. Maryland,* 561 F.2d 540 (4th Cir. 1977).

It is apparent, however, that the district court cannot determine whether Fuller was adequately represented without an evidentiary hearing. Although his attorney's failure to prosecute the appeal was remedied by the appointment of new counsel, Fuller's other complaints require appraisal. In *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), the Court approved the use of state records for the decision of petitions for writs of habeas corpus. But it cautioned that such records cannot be substituted for a federal evidentiary hearing when the state court has made no express findings about material issues of fact and the district court cannot reconstruct relevant findings.

The Superior Court's silence with respect to disputed, historical facts, coupled with its reliance on the farce and mockery of justice test for determining the competency of counsel makes it inappropriate for the district court to decide this case solely on the basis of the state records. 28 U.S.C. § 2254(d); *see Townsend v. Sain, supra,* 372 U.S. at 312–18, 83 S.Ct. 745.

The judgment of the district court is vacated, and the case is remanded for further proceedings consistent with this opinion.

K. K. HALL, Circuit Judge, dissenting:

Although the District Court, by adopting the magistrate's findings and conclusions, applied the farce and mockery standard, the record reveals that counsel met the stricter

standard of *Marzullo v. Maryland,* 561 F.2d 540 (4th Cir. 1977). In the post-conviction proceeding, the North Carolina Superior Court held a hearing and made findings of fact sufficient for use by the District Court in the resolution of this issue. *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). Applying the proper legal standard to the facts of this case, I believe the District Court's decision was correct and I would affirm.