**Robert Bruce SPRINGER, Appellee,**

v.

**George COLLINS, Warden of the Maryland Penitentiary, Appellant.**

No. 78-6062.

United States Court of Appeals, Fourth Circuit.

Submitted July 27, 1978.

Decided Nov. 17, 1978.

Francis Bill Burch, Atty. Gen. of Md., Clarence W. Sharp, Asst. Atty. Gen. of Md., Chief, Crim. Div., John P. Stafford, Jr., Asst. Atty. Gen. of Md., Baltimore, Md., on brief for the appellant.

Roland Walker, Baltimore Md., on brief, for appellee.

Before WINTER and HALL, Circuit Judges, and FIELD, Senior Circuit Judge.

FIELD, Senior Circuit Judge:

After waiving trial by jury, Robert Bruce Springer was tried to the court and convicted in the Circuit Court for Cecil County, Maryland, of carnal knowledge of a female child under the age of fourteen years, as well as the possession and distribution of certain controlled drugs. Springer did not appeal his conviction, but subsequently sought relief in the state court under the Maryland Post Conviction Procedure Act, charging that the failure of his trial counsel to investigate and/or develop a defense of insanity constituted ineffective assistance of counsel. Following an evidentiary hearing in that proceeding, relief was denied, and an application for leave to appeal was denied by the Court of Special Appeals of Maryland. Thereafter, Springer filed a petition for habeas corpus relief in the district court, raising the same constitutional question. The district court, acting upon the evidence developed in the state court proceedings, concluded that the failure of Springer's counsel to explore the possibility of an insanity defense was outside the range of competence expected of him as a defense attorney and granted habeas corpus relief.[1] Maryland has appealed.

As noted by the district court, the essential facts are not disputed. On the night of Sunday September 2, 1973, Springer visited the home of his girl friend, Joan Fuentes, the mother of the victim. During the course of the evening Springer had consumed certain drugs[2] and alcohol and also induced Mrs. Fuentes and the victim to take some drugs. Springer made sexual advances toward the young girl who was then eleven years old, and talked of having intercourse with her. Becoming alarmed, Mrs. Fuentes drove to the police station and asked the police for assistance. Shortly after midnight several officers returned with her to her home where they found Springer

1. The opinion of the district judge appears in 444 F.Supp. 1049, and his precise conclusion was as follows:

> While 20–20 hindsight is always better than foresight and there can be no certainty that one or more psychiatrists would have testified at Springer's trial in accord with the opinion of Dr. Greenberg expressed in this case, and of course no certainty that an insanity defense could have been successfully asserted at trial, Springer's trial counsel's failure to discuss same with his client and to explore the possibility of advancing an insanity defense was outside the range of competence expected of him as a defense attorney in a criminal case involving a very serious charge. Accordingly, Springer is entitled to the federal habeas corpus relief he seeks herein.

444 F.Supp. at 1065.

2. The drugs consumed by Springer were secobarbital and amobarbital to which he referred as Tuinal, and methaqualone to which he referred as Quaaludes.

When the term "drugs" is used in this opinion it will refer to Tuinal and/or Quaaludes. Under Maryland law both are Controlled Dangerous Substances, Schedule III. Md.Ann. Code, art. 27, § 279.

and the victim lying naked and apparently unconscious on a couch in the living room. The officers took several photographs and finally managed to awaken Springer. Springer refused to dress himself and remained naked while being taken into custody. The victim was taken to the hospital in a critical condition and was placed in intensive care. It was ascertained by the attending physician that she had consumed drugs and had been sexually molested.

Some two days before the offense, in the early morning hours of Saturday, September 1, Springer had been involved in an automobile accident when he passed out after having consumed a large quantity of drugs and alcohol. On that occasion Springer was arrested and confined overnight and while in custody his stomach had been pumped out. When he was released from jail on Sunday morning he joined some friends and after picking up some beer and a pint of 190 proof grain alcohol they went to the home of one of the friends and started taking pills, drinking beer and alcohol and smoking marijuana. As a result, Springer passed out for a while, and after he came to drove with some difficulty to the apartment of Mrs. Fuentes. Springer, who was thirty-three years old, had been using alcohol for a number of years, and had been using drugs for some eight months prior to the offense. Based upon his experience, he was aware that he could take Qualudes and still have a "general idea" of what was going on, but that Tuinal had a more dramatic effect upon him. As he expressed it in his testimony, "[with Tuinal] you forget. You can't remember. That's all. After a certain point you just don't remember anything." Trial Tr. at 183. Springer testified that ordinarily he limited himself to four pills but that on the day in question he "kinda let loose" and took many more than he had on prior occasions.

Following his arrest Springer retained as his counsel an attorney who had been prac-

ticing in Cecil County for over fourteen years. In his practice the attorney had represented defendants in twenty or more serious felony cases, and four or five of those cases involved insanity defenses and psychiatric evidence. The attorney had known Springer for some ten years during which time he had seen him on both a social and business basis, having represented Springer in other criminal and civil proceedings, including a divorce action. He knew that Springer had been steadily employed by a firm in Newark, Delaware, for four years prior to the incident. Springer told his attorney that he had no recollection of having committed the offense or of having taken part in most of the alleged occurrences during that evening. From their discussions, it was clear that over the weekend Springer had been on a drug and alcohol binge and in the course of his investigation the attorney talked with some of Springer's companions who described his condition on Sunday evening as "drunk and/or stoned." The attorney was aware of the fact that over the years Springer had used both drugs and alcohol, but in his contacts with Springer he had observed nothing which was abnormal or indicated that a psychiatric evaluation was in order. Springer had never participated in any psychiatric examination, counseling or treatment. On this point Springer testified that he had not indicated to his attorney that he was a problem drinker; that he had never considered any AA program since he did not think it was necessary. As he put it, "I never really got into any trouble to maybe bring it to light that I maybe needed help." Post-conviction Tr. at 67.

Prior to trial, the attorney talked with Springer on several occasions, developing the factual background of the charges and possible avenues of defense.[3] At the pretrial stage the attorney discussed with the State's Attorney the possibility of a plea bargain and filed a comprehensive motion for inspection and discovery. In the course of his trial preparation the attorney obtain-

3. In the state post-conviction proceeding, Springer testified that he did not contend that his several discussions with his counsel were inadequate to fully cover the case and develop his defense.

ed the hospital records pertaining to the diagnosis and treatment of the victim which revealed that sperm was present in the victim's vagina. He also learned of the existence of the photographs taken by the police on the night of the offense. In the light of these developments his counsel advised Springer to elect a court trial rather than try the case before a jury.

At trial, Springer's attorney attempted to raise a doubt in the court's mind as to the occurrence of intercourse, suggesting that the hospital records had not been properly maintained. This argument was based upon the absence of direct testimony regarding the occurrence of intercourse and the generally accepted belief that large quantities of drugs and alcohol have a depressant effect on sexual potency. He also urged upon the court that the requisite intent to support the charge of carnal knowledge was lacking, contending that Springer was too intoxicated to have such intent. The trial court, however, found from the evidence that the act of intercourse had occurred, and rejected the intoxication defense upon the ground that under Maryland Law intoxication is not a defense to the crime of rape.[4]

Some time after his conviction Springer retained his post-conviction counsel, and in January, 1975, he was examined by Dr. Allen S. Greenberg, a neuropsychiatrist. Based upon this examination and an interview with Springer's mother, Dr. Greenberg concluded that Springer was suffering from an alcoholic psychosis at the time of the commission of the crime.[5] In the light of this report the district court found that "there was evidence, including Springer's past problems and the nature of the crime itself, which seemingly was sufficient to have alerted trial counsel to the possibility of successfully asserting an insanity defense." 444 F.Supp. *supra,* at 1064, and

concluded that counsel's failure to explore and advance such a defense amounted to a deprivation of Springer's Sixth Amendment right to effective assistance under *Marzullo v. Maryland,* 561 F.2d 540 (4 Cir. 1977).

In *Marzullo* we formally jettisoned the "farce and mockery" test of *Root v. Cunningham,* 344 F.2d 1 (4 Cir. 1965), and drawing upon *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), adopted as an appropriate standard for determining the effectiveness of counsel: "Was the defense counsel's representation within the range of competence demanded of attorneys in criminal cases?" 561 F.2d at 543. We were careful to note, however, that effective representation is not synonymous with errorless representation, and observed that "[a] convict generally must establish that his counsel's error was so flagrant that a court can conclude that it resulted from neglect or ignorance rather than from informed, professional deliberation." *Id.* at 544.

■ Unquestionably, the pretrial investigation and preparation of Springer's attorney, as well as his discovery efforts and vigorous conduct of the trial fell well within the "range of competence" demanded by *Marzullo.* His performance in all of these respects was in marked contrast to that of the appointed attorney in *Wood v. Zahradnick,* 578 F.2d 980 (4 Cir. 1978), who, except for one interview with his client, apparently made no pretrial preparation whatever. Nor do we find any flagrant dereliction in the attorney's failure to explore an insanity defense. He had known Springer for ten years, having represented him in other matters during that period, and had discerned no evidence of mental problems or abnormalities. Springer had never been treated or hospitalized for mental problems[6] and

---

4. On this point, the trial court relied upon *Frank v. State,* 6 Md.App. 332, 251 A.2d 249 (1969).

5. Dr. Greenberg did not testify in either the state post-conviction proceeding or in the district court. However, his written statement was available in both proceedings, and in the

district court counsel agreed that the report could be considered by the court as opinion testimony.

6. In his opinion the district judge quoted at some length from three cases in the Fifth Circuit: *United States v. Fessel,* 531 F.2d 1275 (1976), *United States v. Edwards,* 488 F.2d 1154

had been steadily employed. The only possible basis for suggesting that counsel should have considered the defense of insanity is the fact that he knew Springer had used alcohol and drugs and had been using them excessively at the time of the offense. True, Springer told his counsel that he could not remember having committed the offense, but by Springer's own admission, his excessive use of drugs on the day in question accounted for his lack of recall. Under these circumstances it occurs to us that the attorney undertook the only reasonable lines of defense available to him. In our opinion, to grant relief in this case would be tantamount to establishing a *per se* rule that in any case in which there is evidence that a defendant was intoxicated by drugs or alcohol at the time of an alleged offense, the "range of competence" test would require that an attorney obtain a psychiatric examination of his client and consider the possibility, indeed the probability, of an insanity defense. We do not think that the Sixth Amendment requires this degree of caution and meticulosity on the part of counsel who has otherwise performed in a competent, conscientious and professional manner.

While we think that Springer's counsel met the test of *Marzullo,* we find an equally persuasive reason for the denial of habeas corpus relief in our conclusion that Dr. Greenberg's diagnosis would not have provided Springer with a valid defense. In his report Dr. Greenberg stated that he found Springer to be alert, cooperative, and well oriented. He was able to converse rationally, appeared to be in good health and manifested no evidence of an organic brain syndrome. In the face of these objective findings, relying largely on Springer's history, Dr. Greenberg made the following diagnosis:

> The loss of memory, the markedly irrational behavior manifested at the time of his arrest and the fact that the crime

itself represents an act which the patient normally would not be motivated to perform in his normal mental state, indicate that the patient was suffering from an alcoholic psychosis at the time of the commission of the crime. It is very well known that patients with chronic alcoholism have marked impairment of their normal behavioral controls which make them susceptible to episodes of psychosis which are sometimes referred to as pathological intoxication. Such episodes of alcoholic psychosis render the patient substantially unable to appreciate the criminality of their actions or to conform their actions to the requirements of the law. These periods of psychosis are different from simple alcoholic intoxication in that normal individuals who become severely intoxicated do not act out these anti-social and ego-alien behaviors.

A fair reading of the diagnosis indicates that in using the term "alcoholic psychosis", Dr. Greenberg meant that in his opinion Springer reacted abnormally to alcohol and when intoxicated was unable to conform his behavior to the requirements of law. This was precisely the diagnosis which confronted the Court of Special Appeals in *Parker v. State,* 7 Md.App. 167, 254 A.2d 381 (1969), in which the defendant's experts testified that the ingestion of alcohol produced an acute brain syndrome which rendered the defendant insane at the time of the commission of the offense. In rejecting the insanity defense the court stated the law of Maryland as follows:

> The rule of law with respect to responsibility for criminal conduct as affected by voluntary intoxication which has been consistently followed by the majority of courts in the United States is substantially that stated by Lord Hale. Regardless of what test is applicable to determining insanity, the majority distinguish between (1) the mental effect of voluntary intoxication which is the immediate result of a particular alcoholic bout; and (2) an

(1974), *Brooks v. State of Texas,* 381 F.2d 619 (1967).

In those cases, however, counsel were aware of the petitioner's mental problems which had

surfaced by a history of hospitalization, psychiatric treatment, or court-ordered competency examinations.

alcoholic psychosis resulting from long continued habits of excessive drinking. The first does not excuse responsibility for a criminal act; the second may. In other words, if a person drinks intoxicating liquor and is sane both prior to drinking and after the influences of the intoxicant has worn off, but is insane by the applicable test while under the influence of the intoxicant, he comes under the first category. (Footnote omitted).

254 A.2d at 388.

In denying post-conviction relief, the state hearing judge, citing *Parker,* made the following observation:

There is no evidence before this Court, even considering Dr. Greenberg's report, that Petitioner was suffering from an alcoholic or drug psychosis or mental disorder resulting from a long-continued habit and not the mental effect of voluntary intoxication which is the result of a particular drug and/or alcoholic binge and/or bout.

The Court of Special Appeals agreed with this conclusion, and in its per curiam opinion denying Springer's application for leave to appeal, stated:

Without trying to inject ourselves into the mental functionings of trial counsel, it seems apparent that if the defense of insanity had occurred to counsel, then, based upon his knowledge of the totality of the facts, such a defense was rejected. * * *

Furthermore, we observe that the allegations of excessive use of drugs and alcohol prior to the instant offense do not give rise to an inference that "an insanity defense should have been investigated."

The panel which denied Springer's application to appeal included two judges who participated in the *Parker* decision, including the author of the opinion in that case, and we agree with their appraisal of the performance of Springer's counsel. The judgment of the district court granting habeas corpus relief is reversed.

REVERSED.