Herman Mathew VIA, Appellee,

v.

SUPERINTENDENT, POWHATAN COR-RECTIONAL CENTER, Appellant.

No. 79–6550.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 13, 1980.

Decided Feb. 26, 1981.

Linwood T. Wells, Jr., Asst. Atty. Gen., Richmond, Va. (Marshall Coleman, Atty. Gen., Richmond, Va., on brief), for appellant.

Johnson Kanady, III, Richmond, Va. (Rocovich, Dechow, Parvin & Wilson, P. C., Richmond, Va., on brief), for appellee.

Before BUTZNER, Circuit Judge, JOE INGRAHAM, Senior Circuit Judge for the Fifth Circuit, sitting by designation, and RUSSELL, Circuit Judge.

BUTZNER, Circuit Judge:

The Superintendent of a Virginia prison appeals from a judgment of the district court granting Herman Via a writ of habeas corpus on the ground that his plea of guilty to five drug charges in state court is invalid because he was denied effective assistance of counsel. We affirm.

I

The record of the state trial proceedings discloses that on March 28, 1977, the grand jury returned three indictments charging Via with the sale of marijuana and one indictment charging the sale of LSD. Via was released on bail on April 1, and trial on the LSD charge was set for May 20, 1977.

On the day of trial, Via's attorney moved for a continuance on three grounds. First, that because he had been retained three days earlier, he was "unprepared to try [the case] at the present time." Second, that venue should be changed because of adverse pre-trial publicity. And third, that a prospective juror had told some other members of the panel to give a stiff sentence to a defendant in an earlier drug case to let Via know that he was not going to get off light.[1]

The trial judge stated that unless Via could prove that he had been absolutely unable to employ counsel who could have been prepared, he was going to take the position that the request for a continuance

---

1. In Virginia the jury in a unitary trial first determines if the accused is guilty and then sets the punishment within the terms prescribed by law. Va.S.Ct.R. 3A:25(a).

was for the sake of delay only. He ruled that Via would have to overcome this burden. Because the trial judge believed that the voir dire examination of the jurors would be sufficient to determine jury bias, he denied the attorney's request to question individually members of the jury who had served in the earlier drug case. He noted that 35 jurors had been summoned, and he expressed the opinion that from this number a fair and impartial jury could be selected. The trial judge then directed Via's attorney to present his evidence for a change of venue. Via's attorney was then granted a recess.

Court reconvened, and Via waived indictment on a fourth charge of selling marijuana, consenting to be tried on an information. Without objection, the prosecutor amended an indictment to correct an error. Via pled guilty to all five charges. The state trial judge conducted a thorough arraignment, in which Via admitted his guilt, stated his plea was voluntary, that no one had promised to make any recommendation to the court about his sentence, that no person had forced him to enter his plea, that no one had made any prediction about his sentence, that he had no understanding what his sentence would be, that he had had enough time "before today" to talk to his attorney about his plea of guilty, and that he was satisfied with the services of his attorney.

With the consent of Via's attorney, the prosecutor then summarized the evidence against Via. All of the sales were made to the same undercover agent. The first sale involved two ounces of marijuana, the second a little less than a pound, the third five ounces, and the fourth, which the prosecutor described as "set up" by the agent, involved ten pounds. The prosecutor stated that Via solicited the agent to purchase 96 tablets of LSD.

The court accepted Via's pleas and found him guilty. The prosecutor recommended that Via be sentenced to the penitentiary for 32 years. Via's attorney acknowledged that he had discussed the sentence with the prosecutor. The court sentenced Via to confinement in the penitentiary for 32 years.[2] Upon learning that Via had three young children, the court suspended the execution of sentence and continued him on bail for three weeks to get his affairs in order.

## II

After exhausting his state remedies, Via filed this petition alleging that the representation afforded by his counsel was ineffective, his plea of guilty was involuntary, he was denied witnesses, and he was denied a fair and impartial trial. Upon receipt of the state's answer, the district court appointed counsel for Via and conducted an evidentiary hearing.[3]

The habeas proceedings disclosed the following additional facts. Between indictment and trial, Via was represented by three successive attorneys. His first attorney, who represented him when his bail was set, told him that the prosecutor would

---

2. Via was sentenced to 22 years on the single LSD charge and 10 years each on the 4 marijuana charges. Three of the marijuana sentences were to run concurrently with the 22 year LSD sentence.

3. The answer states in part:

Respondents state that the petitioner entered a guilty plea to the charges against him. Subsequently, the petitioner filed a petition for a writ of habeas corpus in the Virginia Supreme Court. Thereafter, the petitioner filed an additional petition for a writ of habeas corpus in the Virginia Supreme Court. The respondents state that the petitioner has exhausted his state remedies because he has presented the allegations that are now presented to this Court to the Virginia Supreme Court.

The Supreme Court of Virginia denied the writs without an evidentiary hearing and without opinion. The material facts relevant to the claim of ineffective assistance of counsel are not disclosed by the state trial record. They were developed at the federal evidentiary hearing. Under these circumstances, the requirements of 28 U.S.C. § 2254(d) are not applicable. *See Sumner v. Mata,* —— U.S. ——, ——, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981) ("Section 2254(d) applies to cases in which a state court of competent jurisdiction has made 'a determination after a hearing on the merits of a factual issue' ").

agree to a 20 year sentence if Via pled guilty. Via insisted on pleading not guilty and did not retain this attorney for trial. A friend then took him in early April to the home of the attorney who ultimately represented him. They discussed the case, but Via did not retain him at that time. Instead he retained another attorney, paying him $1,200.

On May 16 Via went to the office of the attorney who ultimately represented him and said he had been offered 20 years on a plea of guilty, but he wanted to plead not guilty. The attorney responded that 20 years was too much and that he could probably get him five years.

The next day Via discharged his second attorney, who returned all but $200 of his fee. Via was dissatisfied with this attorney because "he was talking about 20 years, too." Via then retained his third and last attorney—the lawyer with whom he discussed the case in early April and on May 16. He paid this attorney $1,500 of his $2,500 fee.

Via again told his counsel that he wanted to plead not guilty to all of the charges. He testified that the attorney did not ask him whether he was guilty, and he did not tell the attorney that he was guilty. He claimed that he informed his counsel of three witnesses who could impeach the credibility of the Commonwealth's principal witness—the agent to whom Via allegedly sold drugs. Two of the witnesses would testify that the agent had sold drugs to them. The third witness, he stated, would testify that the agent wrote a note to Via, which Via could not locate, threatening to turn Via in to the police unless he sold him certain drugs. He also told his counsel that the agent had a police record.

A relative of a juror who had served in the earlier drug trial accompanied Via. She furnished information about the bias some jurors had against him. She was willing to testify about the incident that indicated bias, and she provided the names of two jurors in the earlier case who would also testify.

The attorney told Via he would get a continuance because he had not had sufficient time to prepare for trial and because of the allegation of jury bias. The attorney then phoned the prosecutor who said he would oppose the continuance because Via had employed several attorneys. Via's attorney also phoned the trial judge who said that he would not grant a continuance by telephone unless the prosecutor consented. Nevertheless, the attorney continued to assure Via that a continuance would be granted. The attorney also assured Via that he would investigate the allegations concerning the informer.

Via's attorney, testifying on behalf of the state, said that prior to May 17 he conducted no investigation beyond his meetings with Via. After he was retained on May 17, he took no action until May 20, the day of trial, other than to interview the single witness Via brought to his office and to seek a continuance by telephone. On May 20, before court convened, he interviewed the agent, received a copy of the agent's arrest record from the prosecutor, and consulted with another lawyer who had unsuccessfully attempted to impeach the agent in another trial. He anticipated that he would present no witnesses at trial and that the entire defense would turn on his ability to impeach the informer's credibility. Nevertheless, he did not interview the witnesses Via brought to the courthouse who were willing to testify about the informer. In view of the information he had obtained, he believed it was unnecessary to talk with them.

Via's attorney also explained why he had abandoned the motion for a continuance and had recommended the 32 year plea bargain. Although he acknowledged that he had told the trial judge that he was unprepared, he repudiated this statement and claimed that he was prepared. With respect to the second ground for a continuance, he explained that he did not present evidence to support a change of venue because there was none. He also explained that he realized he could not prevail on the claim of jury bias because he discovered during the colloquy with the trial judge that 35 jurors had been summoned.

Via's attorney testified, contrary to Via, that Via had admitted his guilt. He urged acceptance of the plea bargain because he believed that it would be difficult to impeach the informer and that the jury would find Via guilty and return the maximum verdict of 40 years on the LSD charge. He stated that two days earlier jurors in the same court indicated that they would have sentenced a defendant who sold 17 LSD pills to 17 years. In that case, however, no verdict was actually returned because the defendant pled guilty during the trial.

Via testified that he only agreed to the plea because his attorney "said he didn't have time to represent me on a not guilty plea and the judge wasn't going to grant a continuance." Via explained: "I didn't know nothing else to do, you know, [the attorney] said we couldn't go on as not guilty because we hadn't prepared the case." Via said that it was hard to accept the 32 year sentence since he had already turned down an offer of 20 years, but that his attorney "said that he would talk to the judge and get it, you know, some of the time off."

The prosecuting attorney for Roanoke, Virginia, testified at the hearing as an expert witness for Via. He expressed the opinion that the assistance of counsel afforded Via was not within the minimum range of competence demanded of an attorney in a criminal case. He testified that with a client facing a possible sentence as long as Via's, virtually all of the retained counsel in the area would have pursued discovery. He stated that his conclusions would remain the same even if Via's counsel had not told the court he was unprepared for trial.

The district court did not accept the testimony of Via's attorney that he was prepared to try the case. Although the court did not criticize the attorney, it found that he did not have sufficient time to prepare for trial. The court held that Via did not have effective assistance of counsel and granted the writ subject to the right of the state to retry Via.

## III

Because a plea of guilty is a solemn, judicial admission of the truth of the charge, a prisoner's right to contest it is usually, but not invariably, foreclosed. *Blackledge v. Allison*, 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). His statements at arraignment that facially demonstrate the validity of his plea are conclusive unless he presents reasons why this should not be so. *Crawford v. United States*, 519 F.2d 347, 350 (4th Cir. 1975). Furthermore, as *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973), explains, a prisoner "may only attack the voluntary and intelligent character of [a] guilty plea by showing that the advice he received from counsel was not within the standards set forth in [*McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).]"

*McMann* cautions that counsel's advice to plead guilty is not to be judged by retrospectively considering it right or wrong. Instead, the proper standard is "whether that advice was within the range of competence demanded of attorneys in criminal cases." 397 U.S. at 771, 90 S.Ct. at 1449. Adopting *McMann*'s reasonable competency test for determining whether counsel provided effective representation in all criminal trials, whether on pleas of guilty or not guilty, we recognized that "effective representation is not the same as errorless representation." A prisoner "must establish that his counsel's error was so flagrant that a court can conclude that it resulted from neglect or ignorance rather than from informed, professional deliberation." *Marzullo v. Maryland*, 561 F.2d 540, 544 (4th Cir. 1977). Twice in recent years, we have set aside pleas of guilty when prisoners were prejudiced because their counsel did not meet these standards. *Strader v. Garrison*, 611 F.2d 61 (4th Cir. 1979); *Tolliver v. United States*, 563 F.2d 1117 (4th Cir. 1977).

## IV

Guided by these principles, our first inquiry is whether Via can collaterally attack

his plea of guilty. To do this he must present valid reasons why his statements at arraignment should not be conclusively accepted as true. *See Edmonds v. Lewis*, 546 F.2d 566, 567–68 (4th Cir. 1976); *Crawford v. United States*, 519 F.2d 347, 350 (4th Cir. 1975). On cross-examination during the habeas proceedings, Via was questioned regarding the aborted motion for a continuance:

Q. All right, at the trial in court, [your attorney] again asked for a change of venue and he asked for a continuance, but the transcript seems to reveal that the Judge didn't say at all that he wouldn't grant those. He never did say that. What the transcript seems to indicate is that the Court did say, well, you've got to present some evidence. The burden is on you to show that you are entitled to a continuance. I think the Court even indicated that you had fifty (50) days to get an attorney. So, when you say that the Court said that they wouldn't give you a continuance, that's not really accurate, is it?

A. That's what [my attorney] told me.

Q. He told you that they wouldn't give you—

A. Said he wasn't going to grant a continuance and that if we went to trial today that we would surely lose a not guilty plea, because he hadn't had time to prepare the case.

Later, he was cross-examined about his conversation with his attorney during the recess before he entered his guilty plea:

Q. Wasn't the gist of that conversation that if you took a jury trial that you would have essentially the same jury who had socked it to other people who had been convicted of similar offenses and that, therefore, maybe the thing to do was to plead guilty and get rid of the jury that way and then leave it up to the Judge, wasn't that the gist of this conversation?

A. That's what he said, but I wanted—

Q. That's what he was advising—I'm sorry, I interrupted you, go ahead.

A. That's what he was saying.

Q. And it was up to you to decide one way or the other?

A. He said if it was him he would take a guilty plea.

Q. And you agreed with him, right?

A. By that time, I didn't know nothing else to do. You know, he said we couldn't go on as not guilty because we hadn't prepared the case.

When he was cross-examined about the arraignment, Via testified:

Q. Well, you would have had a lot of things against you even if you had gotten a continuance, right? One of them would be a bad jury, right?

A. (No response).

Q. The second thing was that you were really guilty?

A. No.

Q. Huh?

A. No.

Q. Well, you told the Court that you were guilty when you plead guilty.

A. Right.

Q. So, you were, I take it from that you were guilty, right?

A. Well, that was a guilty plea, you know,—

Q. But the Court asked you were you pleading guilty because you were guilty, and you answered, yes. So, I'm assuming from that answer that you were guilty and you knew that and you took that into consideration, right?

A. No.

Q. The plea of guilty that you made didn't have anything to do with whether or not you were guilty or not?

A. I took the plea of guilty because he told me that that was the best way to go.

Q. And you accepted his advice?

A. Well, I didn't have no choice.

Q. Well, that's not really true, is it? You had a choice. You could have—why didn't you have a choice?

A. After I went through all of that I was really confused about the whole thing. I hadn't ever went through that before and I didn't know anything else to do.

Q. Well, the Court asked you all of these questions, like you understand about pleading guilty that you don't have a right to a jury trial, and he asked all of these questions about any leniency, and whether or not there had been any promises, and you didn't have any trouble understanding those questions?

A. I just thought I was supposed to answer no to all of them.

Q. Well, why did you think that?

A. Because I didn't—

Q. Well, that's lying. If it wasn't true and you said, no, then you would be telling a lie.

A. Yeah, I guess so.

Q. Well, you didn't think you were supposed to lie to the Court, did you?

A. No, I didn't think that.

Q. You didn't think that, did you?

A. No.

Pressed by the district judge for an explanation why, after rejecting a 20 year plea bargain, he pled guilty, knowing that the prosecutor was going to recommend 32 years' imprisonment, Via testified:

THE COURT: Did you understand that they had reached a plea bargaining—The Commonwealth Attorney and your attorney had reached an agreement as to what they were to recommend to the Court?

A. I was under—I was thinking that he was going to get it reduced, you know, after the 21 days. He said that he would talk to the Judge and get it, you know, .some of the time off.

THE COURT: Did you say anything to him about, well, I've already talked to one attorney who indicated that we could settle this thing for 20 years?

A. Yes, sir.

THE COURT: What did he say to that?

A. He said that there wasn't no way that the Commonwealth was going to stick by that now because I had a different attorney.

Although Via's attorney insisted in the habeas proceeding that he was in fact prepared to try the case, he did not deny that he told Via that he was unprepared, which was the same representation he had made on the same day to the state trial judge. He did not deny or contradict Via's testimony that he told Via he would get the 32 years' sentence reduced 21 days later.[4] Furthermore, he admitted that he knew that Via had responded falsely to some of the questions at arraignment. Truthful answers would have caused the court to reject the plea. Nevertheless, the attorney did not advise Via to correct his answers.

■ These circumstances, we believe, satisfy the requirement that a prisoner must establish reasons why his statements at arraignment should not be conclusive. See Edmonds, supra, 546 F.2d at 567–68 and Crawford, supra, 519 F.2d at 350. The district court did not err in allowing Via to collaterally attack his guilty plea despite his facially adequate arraignment.

## V

■ Our second inquiry is whether Via's guilty plea was voluntary and intelligent. To attack the plea, Via must show that the advice he received was not "within the range of competence demanded of attorneys in criminal cases." McMann v. Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970); see Tollett v. Henderson, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973). To aid in objectively ascertaining the competency normally expected of attorneys practicing criminal law, we have suggested that courts should refer to precedent from state and federal courts, the American Bar Association Standards for Criminal Justice, and in some instances expert testimony about the conduct in issue. See Marzullo v. Maryland, 561 F.2d 540, 544 (4th Cir. 1977).

---

4. In Virginia a final judgment is subject to modification by the trial court for a period of 21 days. Va.S.Ct.R. 1:1.

In *Coles v. Peyton*, 389 F.2d 224, 226 (4th Cir. 1968), speaking of appointed counsel, we said:

> Counsel for an indigent defendant should be appointed promptly. Counsel should be afforded a reasonable opportunity to prepare to defend an accused. Counsel must confer with his client without undue delay and as often as necessary, to advise him of his rights and to elicit matters of defense or to ascertain that potential defenses are unavailable. Counsel must conduct appropriate investigations, both factual and legal, to determine if matters of defense can be developed, and to allow himself enough time for reflection and preparation for trial.

*Coles*'s requirements are also applicable to retained counsel. *See Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 1715–16, 64 L.Ed.2d 333 (1980); *Stokes v. Peyton*, 437 F.2d 131, 136–37 (4th Cir. 1970). In *Marzullo*, 561 F.2d at 544, we referred to the *Coles* standard as "an objective description of the competency normally demanded of counsel in certain aspects of their service." The ABA Code of Professional Responsibility, E.C. 2–30, cautions that a lawyer should not accept employment when he is unable to render competent service. Moreover, ABA Standards for Criminal Justice § 4–1.2(d) state that a lawyer "should not accept more employment than [he] can discharge within the spirit of the constitutional mandate for speedy trial and the limits of the lawyer's capacity for effective representation." The Code, D.R. 6–101(A), further provides that once a case has been accepted, a lawyer shall not "[h]andle a legal matter without preparation adequate in the circumstances."

Whether Via's attorney was prepared for trial or to advise Via about his plea of guilty is a factual issue. The district court's finding that he was not adequately prepared is amply supported by the evidence including the opinion of the Roanoke prosecutor who testified as an expert in Via's behalf. Before he was retained, Via's attorney understandably did not conduct any investigation other than confer with Via. Although he was retained three days before trial, he conducted no investigation until the morning of trial other than talk with the witness Via brought to his office to support the charge of jury bias. Furthermore, Via's attorney was not even prepared to effectively present a motion for a continuance. As we previously mentioned, one of his grounds for a continuance was the necessity for a change of venue because of adverse publicity. At the habeas proceeding, he testified why he precipitously abandoned his motion: "There was no evidence of pre-trial publicity, that was one thing just thrown in there. There was no adverse evidence of pre-trial publicity." He offered no explanation why he sought a continuance on a ground he could not support.[5]

With respect to the issue of jury bias, Via's attorney admitted that he did not know how many jurors had been summoned until he had made his motion for a continuance. He testified for the state on direct examination:

> Well, again, after having met that morning with [the agent], talking with [an attorney who tried a previous drug case in which the agent testified], talking extensively with Via, we went in to follow what had been our pre-trial plan. That is, we were going to try to get this information before the Judge about the tainting of the jury panel. Well, the record is clear and the Court's got it, what transpired when I made the motion. And at that point, I discovered that they had 35 jurors there. So, even if I got the panel of 12 struck, that had heard the previous matter, I still had 23 jurors. And 23 jurors was going to be enough so that we could come up with a panel of 12.

---

5. 1 ABA Standards for Criminal Justice § 4–1.2(b) and (c) state:

> It is unprofessional conduct for defense counsel intentionally to mispresent facts or otherwise mislead the court in order to obtain a continuance.

> Defense counsel should not intentionally use procedural devices for delay for which there is no legitimate basis.

And that's when I asked for a chance to break on a recess, and I said, Mr. Via, let's go in the back and discuss this. From the attorney's testimony that he did not know how many jurors were summoned until after he moved for a continuance, one can fairly draw the inference that he had not checked the records in the clerk's office to ascertain the jurors' names in order to determine whether they previously had sat on drug cases, and, if so, what verdicts they had returned. It is therefore apparent that he was unprepared to press his motion effectively or to select a jury intelligently should his motion for a continuance be overruled.[6]

Based on the evidence, much of it uncontradicted, disclosed by both the trial and habeas records, we cannot say that the district court's finding that Via's counsel was unprepared is clearly erroneous.

The competency of Via's counsel can be objectively measured by the requirement established in *Coles*, 389 F.2d at 226, the ABA Standards for Criminal Justice, the Code for Professional Responsibility, and the testimony of the expert witness. Applying these standards, we conclude that the district court was warranted in holding that Via's counsel did not afford him representation "within the range of competence demanded of attorneys in criminal cases." *McMann*, 397 U.S. at 771, 90 S.Ct. at 1449. Defense counsel who is unprepared to try a case is also inadequately prepared to advise his client intelligently to plead guilty and accept a plea bargain calling for a substantial sentence. Consequently, Via's plea of guilty was neither intelligent nor voluntary. *See Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973).

Although we cannot say whether Via would have fared better had his case been tried by a jury, the prejudice he suffered is apparent. Throughout these proceedings, from the time he was indicted until he accepted his lawyer's advice to plead guilty, he had insisted on going to trial on a plea of not guilty. Twice he had rejected advice that he accept a plea bargain for a 20 year sentence. He retained his third attorney with the understanding that he would be afforded a trial. At the hearing on his petition for a writ of habeas corpus, Via succinctly stated how he was prejudiced. On cross-examination, he was asked: "Well, what was the problem?" He responded: "I wanted to plead not guilty. That was the problem."

Via had a right to plead not guilty and go to trial. U.S.Const. Amends. VI and XIV. He was prejudiced when this right was frustrated because his counsel was unprepared to represent him effectively.

The judgment of the district court granting the writ subject to the right of the state to retry Via is affirmed.

---

6. Again, 1 ABA Standards for Criminal Justice are instructive:

    Section 4-5.2(b) provides:
    The decisions on . . . what jurors to accept or strike, what trial motions should be made, and all other strategic and tactical decisions are the exclusive province of the lawyer after consultation with the client.
    Section 4–7.2(a) provides:

The lawyer should prepare himself or herself prior to trial to discharge effectively his or her function in the selection of the jury, including the raising of any appropriate issues concerning the method by which the jury panel was selected and the exercise of both challenges for cause and preemptory challenges.