Mark Alan KOPER, Petitioner,

v.

Ronald J. ANGELONE, Respondent.

Civil Action No. 96–0144–R.

United States District Court,
W.D. Virginia,
Roanoke Division.

March 28, 1997.

Ross S. Haine, Haine & Murtagh, Lexington, for Petitioner.

Stephen A. Witmer, Asst. Atty. Gen., Richmond, VA, for Defendant.

## MEMORANDUM OPINION

WILSON, Chief Judge.

This is a petition for writ of habeas corpus under 28 U.S.C. § 2254 brought by Mark Alan Koper, through counsel. On June 29, 1990, Koper pleaded guilty in the Circuit Court of Frederick County to the first degree murder of his pregnant wife and the use of a firearm in the commission of a felony. Koper now collaterally attacks his conviction on the grounds that he was denied the effective assistance of counsel in violation of the Sixth Amendment and that his guilty plea was involuntary. The respondent has filed a motion to dismiss the petition. For reasons explained below, the court grants the respondent's motion to dismiss.[1]

## I.

The following facts are undisputed. On Saturday, March 10, 1990, Koper and his wife, Tammy, visited a state park in West Virginia with their 15-month old daughter, Bethany. Koper's wife was six months pregnant. On their return from West Virginia, Koper turned onto a side road in Frederick County, Virginia, and stopped the car. Koper then killed his wife by shooting her in the back of the head, placed her body in the trunk of the car, and drove approximately 60 miles to a secluded, wooded location in Fauquier County, Virginia, where he deposited his wife's body. On the way home, Koper stopped at a car wash and cleaned the trunk of the car. Koper, a weapons specialist with the United States Marine Corps, also interchanged parts of the gun with which he had killed his wife with parts from another gun.

The following day, Koper contacted the police at approximately 10:00 am and reported that his wife was missing. Koper told the police that his wife had left at approximately 8:00 pm Saturday night to walk four blocks to an IGA store, and she never returned. The police found Tammy Koper's body on March 15. The police subsequently obtained a search warrant for Koper's car and found a pistol and a pair of bloody boots. The police arrested Koper on March 16, 1990. Several days later, Koper gave a statement to the police in which he admitted to killing his wife but maintained that the shooting was accidental. A grand jury indicted Koper on April 5, 1990 for first degree murder and use of a firearm during the commission of a felony. A jury trial was scheduled for June 29, 1990.

On June 29, on the advice of counsel, Koper entered an *Alford* plea of guilty to both charges. Under the terms of the written plea agreement, the parties agreed to a sentence of 62 years in prison. In response to the trial court's questioning, Koper stated that he fully understood the charges against him, that he had discussed the elements of the charges with his attorney, and that he understood what the Commonwealth would have to prove for him to be found guilty of the charges. Koper further stated that he had had enough time to discuss possible defenses with his attorney, that he had decided for himself that he should plead guilty, and that he was pleading guilty freely and voluntarily.

After hearing a lengthy account of the Commonwealth's evidence, the court continued questioning Koper. Koper stated that he was pleading guilty because, knowing the evidence that the Commonwealth had against him, he did not want to risk that a jury would find him guilty. Koper also indicated that he

---

1. The court finds that Koper is not entitled to relief under the law in effect before enactment of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (1996). The court, therefore, does not address the petition under the new Act, which imposes more exacting standards on habeas petitioners. *See Sherman v. Smith,* 89 F.3d 1134, 1143 n. 1 (4th Cir.1996) (en banc), *cert. denied,* — U.S. ——, 117 S.Ct. 765, 136 L.Ed.2d 712 (1997).

understood that by pleading guilty he waived the rights attendant to a plea of not guilty. Koper stated that no one had threatened him or forced him to plead guilty and that he was satisfied with his attorney's representation. Koper stated that he had read and understood the plea agreement and he understood that he would have the right to withdraw his guilty plea if the court did not accept the plea agreement. Koper then entered an *Alford* plea to both charges, and the court found that Koper entered the plea freely, intelligently, and voluntarily. On September 28, 1990, the trial court accepted the plea agreement, found Koper guilty of both charges, and, in accordance with the terms of the plea agreement, sentenced Koper to a total of 62 years in prison.

Koper, proceeding *pro se*, filed a petition for writ of habeas corpus in the Circuit Court of Frederick County in March, 1992. On June 9, 1992, that court dismissed the petition without conducting a plenary hearing. Koper then filed a motion to reconsider which was denied on June 19, 1992. Koper appealed to the Supreme Court of Virginia. On November 19, 1992, the Supreme Court of Virginia denied Koper's appeal.

Koper maintains that he shot his wife accidentally. Koper claims that the following events led to his wife's death. As he and his wife returned with their daughter from West Virginia, he and his wife began arguing about money and her pregnancy. His wife then told him that he was not the father of the baby that she was carrying. Koper pulled the car to the side of the road and told his wife to get out of the car. Koper kept a pistol under the passenger seat of his car. Koper exited the car and walked to the passenger side of the car, where his wife was standing. Koper noticed that his wife had the pistol in her hand. Koper grabbed his wife's arm and she pulled away. Koper then grabbed the gun, and, as his wife turned around to move away from him, he accidentally shot her in the back of the head.

The Commonwealth, however, uncovered significant evidence that Koper murdered his wife. First, Koper went to great effort to conceal the crime. Koper moved the body and left it in a secluded area. He falsely reported to the police that his wife was missing. He cleaned out the trunk of his car and dismantled the murder weapon. The police later found parts of the murder weapon in Koper's mother's car. Koper admitted to the killing and claimed it was accidental only after the police found his wife's body and arrested him.

Also, the evidence indicated that the shooting was not accidental. After the police recovered the missing parts of Koper's pistol, they reassembled the murder weapon. Forensic testing revealed that the weapon had 6 pounds of trigger pull and that the gun left powder residue from as far away as three feet. The police found no powder residue on the victim, who died as a result of a gunshot wound in the back of the head at the base of her skull.

Koper also had motive to kill his wife. Koper had been seeing at least two other women, Amanda Schimmel and Terry Rownes, at the time of the murder. Both women believed that Koper was separated from his wife. One of the women was pregnant with Koper's child.

Furthermore, the Commonwealth had strong evidence that the killing was premeditated. On Thursday, March 8, two days before the murder, Koper invited Schimmel to come to his house on Saturday. Koper stated that he would make her dinner and then she could babysit Bethany while Koper worked. Koper confirmed the plans on Friday evening and again on Saturday morning prior to the murder. Schimmel told the police that when she arrived on Saturday evening there were a few pictures of Koper, his wife, and Bethany on the wall. When Schimmel returned to Koper's house on Sunday, after Koper reported his wife missing, she noticed that Koper had hung more pictures on the wall. In addition, the other woman, Rownes, told the police that she and Koper had plans to fly to Texas to attend a wedding in April. The Commonwealth thus had evidence that Koper knew on the preceding Thursday that his wife would not be around on Saturday evening, and that Koper made plans prior to the murder to fly to Texas with another woman.

## II.

■ Respondent argues that Koper's claims are procedurally barred because Koper failed to raise these claims on appeal in the Supreme Court of Virginia after the Circuit Court of Frederick County denied his petition for writ of habeas corpus. The court agrees. This court can address the merits of Koper's claims only if Koper demonstrates that he has exhausted his state remedies by presenting his claims to the Supreme Court of Virginia. To present a claim to the Supreme Court of Virginia on appeal, the petitioner must include the claim in an assignment of error. Va. Sup.Ct. R. 5:17(c). The assignments of error must list "the specific errors in the rulings below upon which the appellant intends to rely." *Id.*

Koper raised his present claims in a petition for writ of habeas corpus in the Circuit Court of Frederick County. After that court dismissed the petition, Koper filed a petition for appeal in the Supreme Court of Virginia. Koper set out two assignments of error in his petition for appeal. The first assignment of error asserted that the habeas court erred when it found that Koper's guilty plea was not unknowing, unintelligent, and involuntary, without conduct a plenary hearing. The second assignment of error asserted that the habeas court erred when it found that Koper was not denied the effective assistance of counsel, without conducting a plenary hearing.

The Supreme Court of Virginia addressed both assignments of error on the merits. However, under Virginia law, Koper's assignments of error raised only the procedural issue as to whether the habeas court erred in dismissing the claims without conducting a hearing, and not the substance of the claims. In *Yeatts v. Murray,* 249 Va. 285, 455 S.E.2d 18 (1995), the Supreme Court of Virginia held that an assignment of error in which the appellant claimed that the habeas court erred in dismissing the petition "without ordering an evidentiary hearing as to his allegations of ineffective assistance of counsel" challenged only the habeas court's alleged procedural error in not conducting an evidentiary hearing and did not raise a challenge to the substantive ruling on the merits of the inef-

fective assistance of counsel claims. *Id.* 455 S.E.2d at 21. The assignment of error in *Yeatts* is essentially identical to Koper's assignments of error. The court concludes that, under Virginia law, Koper failed to raise on appeal a challenge to the habeas court's substantive ruling on the merits of his claims alleging the ineffective assistance of counsel and challenging the voluntariness of his guilty plea.

Petitioner argues that the holding in *Yeatts* created a "new rule" of law that the court should not apply to Koper. The Supreme Court of Virginia issued the Yeatts opinion after Koper completed his petition for appeal to the Supreme Court of Virginia. However, Yeatts did not change the law regarding the presentation of issues on appeal in Virginia. The Supreme Court of Virginia was simply enforcing a long-established procedural rule. *Yeatts,* 455 S.E.2d at 21. Therefore, Koper is not being prejudiced by the retroactive application of a new procedural rule.

■ The court finds that Koper has not demonstrated that he has exhausted his present claims. "Meaningful exhaustion is that which accords with the state's chosen procedural scheme." *Mallory v. Smith,* 27 F.3d 991, 995 (4th Cir.), *cert. denied,* 513 U.S. 1047, 115 S.Ct. 644, 130 L.Ed.2d 549 (1994). The court declines to inquire whether the Supreme court of Virginia should have presumed from the allegations in Koper's petition that he intended to raise the substance of his claims on appeal. Such an inquiry "would be inconsistent with the very rationale underlying the exhaustion requirement: comity." *Mallory,* 27 F.3d at 996.

It is clear that if Koper were now to present his unexhausted claims to the Supreme Court of Virginia, that court would find review of the claims barred under Virginia Code § 8.01–654(B)(2). Accordingly, federal review of Koper's claims is now also barred. Gray v. *Netherland,* —— U.S. ——, —— – ——, 116 S.Ct. 2074, 2080–81, 135 L.Ed.2d 457 (1996).

## III.

In any event, the court finds that Koper's claims lack merit. Koper first alleges that

he was denied the effective assistance of counsel. The Sixth Amendment protects a criminal defendant's right to the effective assistance of counsel. To demonstrat he has been denied this right, Koper must satisfy the two-prong test announced in *Strickland v. Washington,* 466 U.S. 668, 669, 104 S.Ct. 2052, 2055–56, 80 L.Ed.2d 674 (1984). First, Koper must show that his counsel's representation fell below an objective standard of reasonableness. *Id.* at 688, 104 S.Ct. at 2064 In determining whether Koper has made this showing, this court begins with the strong presumption that counsel's conduct was within the wide range of objectively reasonable assistance. *Id.* at 688–89, 104 S.Ct. at 2065. Reviewing courts are generally reluctant to second-guess the tactics of defense attorneys. *Goodson v. United States,* 564 F.2d 1071, 1072 (4th Cir.1977). Second, Koper must show that his attorney's conduct prejudiced him. Specifically, Koper must demonstrate that his attorney's performance affected the outcome of the plea process. *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). Koper must show a reasonable probability that, but for counsel's unprofessional errors, a reasonable defendant in his place would not have pleaded guilty and would have proceeded to trial. *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *Ostrander v. Green,* 46 F.3d 347 (4th Cir.1995), *overruled on other grounds, O'Dell v. Netherland,* 95 F.3d 1214 (4th Cir.1996)(en banc).

▮ Koper maintains that he was denied the effective assistance of counsel when his attorney gave him allegedly erroneous advice with respect to the effect an *Alford* guilty plea would have on the pending custody proceedings involving Koper's daughter. Koper asserts that his primary concern throughout the criminal proceedings was the custody of Bethany. Koper alleges that he repeatedly asked his attorney what effect his guilty plea would have on the ability of his parents to gain permanent custody of Bethany. In response, Koper's attorney allegedly assured Koper that the guilty plea would not adversely affect the custody proceedings and might, in fact, help Koper's parents to gain custody of Bethany by demonstrating Koper's acceptance of responsibility for his actions.

▮ The Sixth Amendment does not require counsel to advise a criminal defendant of the collateral consequences of a guilty plea. *See Strader v. Garrison,* 611 F.2d.61, 65 (1979). In the present case, Koper asks this court to find that he was denied the effective assistance of counsel when his attorney allegedly gave him erroneous advice about what affect a plea of guilty might have on the interests of third parties in a civil proceeding that is only tangentially related to the Koper's criminal proceedings. The court is of the opinion that the Sixth Amendment does not require an attorney to provide effective assistance with respect to matters, such as a third party's interest in a custody dispute, that bear little or no relation to the criminal proceedings. *See United States v. DeFreitas,* 865 F.2d 80 (4th Cir.1989) (attorney not ineffective for failing to advise defendant that guilty plea might subject him to deportation).

The Fourth Circuit, however, has held that a defendant may be denied the effective assistance of counsel if his attorney's gross misadvice with respect to collateral consequences induces the defendant to enter a plea of guilty. *Strader v. Garrison,* 611 F.2d 61 (4th Cir.1979). In the present case, even assuming that the outcome of the custody proceedings was so important to Koper that his attorney's alleged misadvice induced him to plead guilty, Koper has not demonstrated that his attorney's advice fell below an objective standard of reasonableness. Koper asserts that the advice was "dead wrong." As support for this assertion, Koper states that the custody court denied Koper custody because of his conviction and lengthy prison sentence. However, the fact that the outcome of the custody proceedings was unfavorable does not demonstrate that the attorney's advice was so deficient as to rise to the level of the ineffective assistance of counsel. At most, Koper has demonstrated that his attorney's prediction as to. the effect that an *Alford* plea might have on the custody proceedings was wrong. Koper has not demonstrated that the attorney's prediction was contrary to law or based on gross misinfor-

mation.[2] The court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065 (1984). In this case, the court concludes that the attorney's advice that the custody court might look favorably on Koper's willingness to accept responsibility for his crime, when viewed from the attorney's perspective at the time, was lot so grossly misinformed as to fall without the wide range of objectively reasonable assistance. The court, accordingly, denies relief on this claim.

■ Next, Koper alleges that he was denied the effective assistance of counsel because his attorney was not prepared for trial when he advised Koper to plead guilty. Koper states that he met with his attorney only four times prior to trial. He further asserts that his attorney had not prepared a trial outline or questions for voir dire, direct examination, and cross-examination. Koper admits that his attorney had subpoenaed witnesses on Koper's behalf, but maintains that his attorney had not prepared the witnesses' testimony or directly interviewed any of the Commonwealth's primary witnesses. Koper states that his attorney relied on the Commonwealth's representation that Terry Rownes' testimony would prove premeditation, but his attorney never attempted to interview Rownes directly.

Koper further argues that the plea agreement was not in his best interests because the 62 year sentence exceeded the maximum recommended sentence under Virginia's sentencing guidelines. Koper states that his attorney did not advise him that the difference in parole eligibility on a 62 year sentence and a life sentence was only three years or that the jury could sentence him to less than 62 years even if it found him guilty of first degree murder.

Even assuming that the attorney was not prepared for trial and that the attorney's advice with respect to the plea agreement was deficient, Koper's ineffective assistance of counsel claim fails because he has not shown a reasonable probability that, but for counsel's alleged unprofessional errors, a reasonable defendant in his place would not have pleaded guilty and would have proceeded to trial. *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 370–71, 88 L.Ed.2d 203 (1985) (emphasis added). A reasonable defendant, when considering whether to plead guilty, would take into account the strength of the Commonwealth's case. *Ostrander*, 46 F.3d at 356. In Koper's case, the Commonwealth had considerable evidence to support a conviction for first degree murder. Koper concealed his wife's body, cleaned the car to destroy evidence, dismantled the murder weapon, and lied to the police about his wife's disappearance. Koper's extramarital affairs were evidence of motive. Two days before the murder, Koper made plans to have dinner with another woman at his house on the evening of the day of the murder. Koper had also made plans to travel to Texas with another woman in April. The Commonwealth thus had evidence of premeditation. Moreover, the forensic evidence belied Koper's claim that the killing was accidental. The murder weapon had six pounds of trigger pull, and the lack of powder residue on the victim established that Koper was more than three feet away from his wife when he shot her.

A reasonable defendant would also consider whether a plea of guilty would minimize his sentence. In Virginia, first degree murder is a Class 2 felony punishable by anywhere from twenty years to life in prison and

---

**2.** Insofar as Koper's argument is premised on an assumption that Koper would not have been convicted of murder if he had not pleaded guilty, the court finds otherwise. The Commonwealth's evidence was substantial, and Kuper's version of the crime was not supported by the forensic evidence. Therefore, it is likely that Koper would have been convicted of murder and sentenced to a lengthy prison term whether or not he pleaded guilty. Moreover, it appears that the custody court granted custody to Bethany's maternal grandparents for a variety. of reasons, including Koper's "calculated attempt to prevent his murdered wife's family from obtaining custody of Bethany" and "the apparent lack of cooperation by [Koper's parents] with official police investigators concerning the murder." (Petitioner's Exh. L at 10–11). The court thus cannot agree with Koper's assertion that Koper's guilty plea and conviction caused his parents to lose custody of Bethany.

second degree murder is a Class 3 felony punishable by anywhere from 5 to 20 years in prison. Va.Code. Ann. §§ 18.2-10 & 13.2-32 (Michie 1995). The punishment for the use of a firearm in the commission of a felony is two years. Va.Code Ann. § 18.2-53.1. If Koper had insisted on going to trial and the jury had found him guilty, he could have received a sentence of anywhere from 22 years in prison to life in prison plus two years. Alternatively, if the jury found him guilty of second degree murder, it could have sentenced Koper to anywhere from 7 years to 22 years prison. Koper's plea agreement stipulated a sentence of 62 years in prison.

Koper has not demonstrated that a reasonable defendant in his place, but for his counsel's unprofessional errors, would not have pleaded guilty but would have proceeded to trial. The Commonwealth has a strong case for first degree murder. The Commonwealth could have presented the testimony of both Schimmel and Rownes to show premeditation, and the Commonwealth had forensic evidence to show that the shooting was not accidental. Moreover, the circumstances of the crime were such that a jury would likely have sentenced Koper to the maximum penalty. Koper shot and killed his pregnant wife while their daughter sat in the car, dumped the wife's body in the woods, cleaned out the car, and then went home and prepared for a date with another woman. The court finds it highly likely that a jury would have found Koper guilty of first degree murder and the use of a firearm in the commission of a felony and would have sentenced Koper to life plus two years in prison. Although Koper's plea agreement subjected him to a lengthy prison term and may not have substantially decreased the time that he would have to serve before he would be eligible for parole, the court does not find that a reasonable defendant in Koper's place, having considered the strength of the Commonwealth's evidence and the high probability of receiving a life sentence if he proceeded to trial, would not have accepted the plea agreement. Koper has thus failed to show prejudice, and the court denies relief on this claim.

■ Finally, Koper argues that his guilty plea was involuntary because his attorney coerced him into pleading guilty. According to Koper, his attorney presented him with a proposed plea agreement two days before trial. The terms of the agreement required Koper to agree to a 75 year sentence. Koper maintains that his attorney was not prepared for trial and told Koper that he would be found guilty and sentenced to life in prison if he did not plead guilty. Koper further contends that his attorney threatened to withdraw from the representation if Koper did not plead guilty and that his attorney never advised him that he might receive less than the maximum sentence from the jury, that the difference in parole eligibility on a life sentence and a 62 year sentence was only three years, or that a jury might find him guilty of the lesser offense of second degree murder. Koper rejected the plea offer.

The next day his attorney returned with a plea agreement that called for a 62 year sentence. The attorney allegedly told Koper that he would not represent him if he insisted on going to trial. Koper maintains that his attorney did not advise him that the trial might be continued if his attorney withdrew. Koper contends that he believed that he would be forced to go to trial without an attorney if he did not plead guilty. As a result of the alleged coercion, Koper agreed to plead guilty. Koper alleges that his attorney advised him that he would not be under oath when he entered the plea; that he would not be punished if he responded falsely to the judge's questions; and that the judge would reject the plea and Koper would receive a life sentence if Koper did not answer the questions appropriately.

■ A federal court should rarely grant habeas relief to a petitioner collaterally attacking a guilty plea if the petitioner, at the time of the plea hearing, stated that the plea was voluntary. *See Sargent v. Waters*, 71 F.3d 158 (4th Cir.1995). "[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea hearing], as well as findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74, 97 S.Ct.

1621, 1629, 52 L.Ed.2d 136 (1977). Although the barrier is not insurmountable, a petitioner must present compelling reasons why his statements at the plea hearing are not conclusive. *Via v. Superintendent,* 643 F.2d 167, 172 (4th Cir.1981).

At the plea hearing, Koper stated that he was pleading guilty because of the strength of the Commonwealth's case and his desire avoid a jury trial. Koper stated that he had decided for himself that he should plead guilty and that he was pleading guilty freely and voluntarily. Koper further indicated that no one had threatened him or forced him to plead guilty and that he was satisfied with his attorney's representation.

The court finds that Koper has not presented any valid reason for the court not to find his statements dispositive. Koper states that he had no prior experience with criminal proceedings, and he believed that if he did not plead guilty, his attorney would withdraw, and he would be forced to go to trial without an attorney. Koper asserts that he did not bring, his attorney's alleged coercion to the attention of the court at the plea hearing because his attorney told him he would not be under oath and if he did not tell the judge what he wanted to hear, the judge would reject the plea agreement and Koper would receive a life sentence. The court finds Koper's allegations are too far-fetched to overcome the "formidable barrier" of his statements to the contrary at the plea hearing. The court finds that Koper's reasons for not bringing the alleged coercion to the attention of the trial court are implausible. Koper has not offered any compelling reason why the court should accept his present self-serving allegations and disregard his prior statements that it was his decision to plead guilty and that no one had threatened him or forced him to plead guilty. The court, accordingly, denied relief on this claim.

## IV.

In conclusion, the court finds that Koper's claims are barred from federal review and are otherwise without merit. Koper has not demonstrated that he was denied the effective assistance of counsel or that his plea was involuntary. The court, accordingly, grants the respondent's motion to dismiss.

An appropriate order will be entered this day.

### *FINAL ORDER*

In accordance with the accompanying Memorandum Opinion entered this day, it is hereby

### ORDERED AND ADJUDGED

that the respondent's motion to dismiss be, and the same hereby is, **GRANTED** and this action is hereby stricken from the active docket of the court.

The Clerk is directed to send a certified copy of this Order and the accompanying Memorandum Opinion to counsel of record for both parties.