IRVING, J.,
for the Court:
¶ 1. Fredrick Goree pleaded guilty in Lauderdale County Circuit Court to the sale of cocaine. He later filed a petition for post-conviction relief alleging that he received ineffective assistance of counsel and that his plea was not voluntarily or intelligently and knowingly made in that he was threatened into taking a plea of guilty by the State with the threat of a greater sentence. The circuit judge denied the relief sought, and Goree appealed. In this appeal, he raises the same issues that he raised in his petition for post-conviction relief.
FACTS
¶ 2. Goree was indicted on July 29, 1998, by a Lauderdale County grand jury for selling cocaine to an undercover agent. At the time the indictment was returned, Go-ree was incarcerated in the State of Tennessee for an offense occurring in that state. He was returned to Mississippi in October 1998, after waiving extradition from Tennessee. Shortly after his arrival in Mississippi, he was served with a copy of the Lauderdale County indictment and arraigned. Treasure Tyson, a public defender, was appointed to represent him. Following the arraignment at which Goree pleaded “not guilty,” an order was entered setting the case for trial on December 15, 1998. However, Ms. Tyson ceased working as a public defender and resigned the position at the end of November 1998. Leslie Gates replaced Ms. Tyson as public *298 defender and undertook the representation of Goree.
¶3. As stated, Goree pleaded guilty to the charge against him but later filed a petition for post-conviction relief. The circuit court denied the petition without conducting an evidentiary hearing. Additional facts will be adduced as appropriate during the discussion of the issues.
DISCUSSION OF THE ISSUES
¶ 4. At the core of Goree’s complaint regarding the voluntariness of his plea is his contention that he was forced to plead guilty to avoid receiving a greater sentence because his lawyer was unprepared to try Goree’s case. When Goree was asked by the trial court if he wanted to plead guilty, the following exchange took place:
A. In the position I am in now, I don’t have no choice.
Q. You have a choice. You have a choice to go to trial before the jury if you want to?
A. Sir, I feel like I’m not represented properly. This man [Goree’s attorney] come up to me yesterday evening and then I come up this morning. That’s my first time seeing him. Now I got a choice to either take 15 years and—
BY MR. ANGERO: No, sir. He doesn’t have a choice of taking 15 years. That was the offer that was on the table yesterday. It is no longer on the table.
A. I got a choice to plead in the blind, and I can get anywhere from 30 and then if I go in there and fight I can get up to 60 years. So I really don’t have no choice.
Q. You have a choice of going to trial before the jury if you want to or you can plead guilty. It doesn’t matter to me which you do. I just want you to make a decision of what you want to do because there are 60 people sitting out there as jurors waiting on us to decide what you are going to do, and I don’t care what you do. I just want you to make a decision. Sir?
A. I can’t get my own lawyer.
Q. Well, let me discuss that for a minute ....
¶ 5. At another juncture in the plea hearing, Goree testified to the following:
He [Gates] don’t know nothing about my case. Me and him, we — he reads my case to me and then he come to me with a plea. He told me he ain’t ready. I know he ain’t ready. I ain’t ready to go in there and fight. Then — and then I still can get possibly 30 years only if I plead in the blind.
¶ 6. The court did not grant Goree’s indirect request for a continuance to allow him time to hire an attorney. Rather, the court continued its interrogation of Goree for the purpose of determining whether Goree understood what he was doing. It is not necessary to repeat that entire discussion here. It is sufficient to say that the trial court asked all of the appropriate questions, and Goree gave all of the appropriate answers, for the trial court to determine that Goree understood what he was doing and was entering the plea voluntarily. This is a portion of how that discussion went:
[BY THE COURT]: I don’t know whether you will be convicted or not get convicted or what your possible sentence may be. I have no idea. All I want to know from you now is what do you want to do? Do you want to have a trial or do you want to plead guilty, just tell me, one or the other, which is it? If you— okay. We will go to trial. He stands mute. I take that to be a not guilty plea so we will go to trial—
[BY GOREE]: I plead guilty.
Q. Sir, I don’t care. I just want you to — and I don’t mean to get upset. *299 I want to be calm as best I know. Today is judgment day. You’ve know that for over two months. That jury of 60 people is sitting out there waiting involuntarily. They have been summoned up here to render justice to the best of their ability. That’s their job and they are sitting out there waiting and all I want to know from you is what do you want to do? What do you want to do?
A. HI sign the plea.
Q. I’ll be more than happy to give you a trial in the courtroom, sir, if that’s what you want. It doesn’t matter. What do you want to do?
A. I plead guilty.
¶ 7. We have reviewed the entire transcript of the plea hearing and find nothing that arguably brings into question the vol-untariness of Goree’s plea other than that portion of the transcript already quoted. Goree cites Via v. Superintendent, Powhatan Correctional Ctr., 643 F.2d 167 (4th Cir.1981), a state habeas case, in support of his contention that his plea was not voluntary despite the fact that the plea transcript facially demonstrates a voluntary plea.
¶ 8. In Via, on the day of Via’s trial, Via’s counsel moved for a continuance because he had been retained only three days earlier and was unprepared to try the case. Additionally, in support of the motion for a continuance, the defense counsel asserted that venue should be changed and that a prospective juror had indicated to some members of the venire panel that they should give a stiff sentence to a defendant in another case in order to send a signal to Via that he was not going to get off light. Id. at 168. The trial judge in Via took the position that unless Via could prove that Via had been unable to employ counsel who could have been prepared, the request for a continuance was for the sake of delay only. The trial judge also ruled that Via shouldered the burden of persuasion on this point. Id. at 168-69.
¶ 9. After a recess, Via pleaded guilty to five offenses. Id. at 169. “The state trial judge conducted a thorough arraignment, in which Via admitted his guilt, stated his plea was voluntary, that no one had promised to make any recommendation to the court about his sentence, that no person had forced him to enter his plea, that no one had made any prediction about his sentence, that he had no understanding what his sentence would be, that he had enough time [before that day] to talk to his attorney about his plea of guilty, and that he was satisfied with the services of his attorney.” Via, 648 F.2d at 169. The court accepted Via’s pleas and found him guilty. Id.
¶ 10. Subsequently, Via filed a federal habeas “alleging that the representation afforded by his counsel was ineffective, his plea of guilty was involuntary, he was denied witnesses, and he was denied a fair and impartial trial.” Id. The federal district judge held that Via did not have effective assistance of counsel and granted the habeas. On appeal, the district judge’s decision was upheld by the U.S. Court of Appeals for the Fourth Circuit. In upholding the district judge’s decision, the appellate court opined:
Throughout these proceedings, from the time he was indicted until he accepted his lawyer’s advice to plead guilty, he had insisted on going to trial on a plea of not guilty. Twice he had rejected advice that he accept a plea bargain for a 20-year sentence. He retained his third attorney with the understanding that he would be afforded a trial. At the hearing on his petition for a writ of habeas corpus, Via succinctly stated how he was prejudiced. On cross-examination, he was asked: “Well, what was the problem?” He responded: “I wanted to *300 plead not guilty. That was the problem.”
Via had a right to plead not guilty and go to trial. U.S. Const. Amends. VI and XIV. He was prejudiced when this right was frustrated because his counsel was unprepared to represent him effectively.
Id. at 170.
¶ 11. At first blush, it might appear that Via supports Goree’s contention that — because his lawyer conferred with him only one time, the day before trial — he was denied effective assistance of counsel and prejudiced thereby. However, a close examination of Via shows that not to be the case.
¶ 12. The major distinction between our case and Via is the fact that Goree was not forced to plead guilty because his lawyer was unprepared to try his case. The record does indicate that Goree did not want to plead guilty. We doubt any defendants do. However, there is a large span between a defendant reluctantly pleading guilty because the State has an iron-clad case against him and a defendant pleading guilty because his attorney has failed to prepare an available defense. Having said that, we do not condone the fact that the lawyer talked with Goree only once before trial, but the fact still remains that Goree has shown us nothing to indicate that his lawyer’s lack of preparation forced him to plead guilty.
¶ 13. The plea transcript does reveal that Goree informed the trial court that, based on what his lawyer had told him, his lawyer was not ready for trial. However, Goree did not inform the trial judge, and does not inform us, as to what his defense would have been had he gone to trial. He does not complain that he was denied the opportunity to present what he believed was a viable defense because his lawyer had failed to prepare that defense. His only complaint was that he was not “ready to go in there and fight” because his lawyer had told him that the lawyer was not ready. It is obvious that the lawyer could never be ready to become a formidable combatant without being equipped with the necessary arms.
¶ 14. From our reading of the record, Goree never outfitted his lawyer with the required battle armor. He never articulated an arguable defense. Even when questioned by the trial judge regarding whether he in fact sold the drugs, all Goree could offer was, “I don’t know whether I done it or not.” When pressed to explain his statement, Goree simply said, “I don’t know.” The trial judge then asked the State to present its factual basis to support the charge. After the State presented its factual basis, the trial judge asked Goree if Goree did what the State had said. Goree responded, “I don’t know, sir.” When asked why he did not know, Goree explained, “Because I’m not for sure whether I was at work that day or not.”
¶ 15. The Via court was faced with a far different situation. This was the state of affairs in Via:
[Via] testified that the attorney did not ask him whether he was guilty, and he did not tell the attorney that he was guilty. He claimed that he informed his counsel of three witnesses who could impeach the credibility of the Commonwealth’s principal witness, the agent to whom Via allegedly sold drugs. Two of the witnesses would testify that the agent had sold drugs to them. The third witness, he stated, would testify that the agent wrote a note to Via, which Via could not locate, threatening to turn Via in to the police unless he sold him certain drugs. He also told his counsel that the agent had a police record.
A relative of a juror who had served in the earlier drug trial ... furnished information about the bias some jurors had against him. She was willing to *301 testify about the incident that indicated bias, and she provided the names of two jurors in the earlier case who would also testify.
Via, 643 F.2d at 170. Additionally, Via had three different attorneys to represent him at different times while the charges were pending against him. He told each of those attorneys that he did not want to accept the plea bargain that had been offered him and that he wanted to plead not guilty. For these reasons, we distinguish Via and conclude that the trial judge did not err in denying Goree’s petition for post-conviction relief.
¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF LAUDERDALE COUNTY DENYING POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LAUDERDALE COUNTY.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, MYERS AND CHANDLER, JJ., CONCUR. SOUTHWICK, P.J., CONCURS IN RESULTS ONLY. BRANTLEY, J., NOT PARTICIPATING.